Shaw, C. J.
Robert Hooper, of Boston, the complainant, executor and trustee under the will of his father, Robert Hooper, late of Marblehead, brings his bill, setting forth the will and the trusts under it, and setting forth the conflicting *127 claims of several of the legatees and heirs at law, for the purpose of obtaining the direction of this court, under its equity jurisdiction, in regard to the true construction and legal effect and operation of the will, and in regard to the right performance of his duties under it, in the execution and performance of the trusts. All the devisees, legatees, and heirs at law of the said Robert Hooper, deceased, were made parties to the suit. By an order, heretofore entered in this suit, the bill is ordered to be taken for confessed against all the respondents, except against William R. Hooper, a grandson of the deceased testator, who has made his answer.
No question arises as to the jurisdiction; it is the plain case of trusts arising under a will, and therefore within the equity jurisdiction of the court, by the terms of Rev. Sts. c. 81, § 8.
The great question arising in the case is, whether, by his will, the testator disposed of the whole of his real and personal estate. It is contended, on the part of the respondent, William R. Hooper, that, in regard to the $40,000 fund, to be created by the executor, and held by him during the life of the wife of the testator, and also the dwelling-house and furniture devised to her for life, with authority to the executor to sell the same, no disposition is made of the reversion expectant on the determination of her life, that it remained, therefore, to pass by inheritance, as intestate estate, and that, by right of representation of his deceased father, he was entitled to his share of it.
It may be proper, first, to consider that provision in the seventh item of the will, which directs the executor, in regard to the $40,000 set apart and invested, to raise an income for the wife during her life, which is, that, after the death of his wife, the said sum, so invested, shall remain during thirty years from her decease, “ the income of which shall be equally divided by my executor, or his successors, on receipt thereof, amongst my before named nine children, oi their heirs.”
It is admitted and claimed by both parties, that this clause in the will cannot be held valid, and we are clearly of that opinion. It tends to keen the estate open and unsettled for a *128 longer time than is allowed by the rules of law; and it is contrary to the rules of law in regard to perpetuities. That clause in the will, therefore, is to be treated as inoperative and void, and as if it had not been inserted; and the estate is to be distributable immediately from .and after the decease of the widow.
The testator having given his widow the dwelling-house and furniture for life, with power to the executor to sell both the house and furniture, and the executor having, after her decease, executed that power, the proceeds stand upon the same footing as the estate itself; and, as the will affected both the real and personal estate, whether the real estate would have passed by devise or descent, the proceeds will pass in the same manner. No distinction, therefore, need be made between the two sums, the $40,000 fund, and the proceeds of the real estate and furniture ; if the will be such as to dispose of the one, it will in like manner dispose of the other. On the contrary, if the one descended, as intestate, to the heirs at law, the other would descend, and to the same persons.
This brings us to the main subject of controversy. If the testamentary gifts by the testator to his six sons and three daughters amounted to a general disposition of his estate, including the reversion expectant upon the termination of the widow’s life estate, it passed by the devises to them, and left nothing to descend as intestate property. This depends on the terms and right construction of the will.
In the fourth clause, he says, “ I give to my sons, Robert, John, & Henry, each one ninth part of my estate, real and personal, after providing for the bequest to my wife and to my two grandsons before named.” The word “ after ” used in such a connection, is often and properly construed to mean “ subject to,” “ after taking out, deducting, or appropriating.” It is this which gives meaning and significance to the words “net,” “residue,” “remainder,” and “ residuary,” so familiar in testamentary dispositions. The fund, the subject matter from which something was to be taken or deducted, was “ my estate, real and personal.” The term “ estate ” is regarded as *129 of very large import, and, unless limited by some epithet, or some association, is construed to mean all the party’s property ; but, when the words'real” and “personal” are added, it seems to put the matter beyond cavil. Then, what is to be deducted or excepted out of this general mass of property ? Two specific money legacies to grandsons, subject to a condition, and a life estate in a house and furniture, and the income of a fund not less than $40,000 to the wife. This gift of a life estate clearly left a reversion ; and this appropriation of the income of a capital fund left the fund itself undisposed of. But both the reversion and the capital fund were part of the testator’s estate, and, not being within the part excepted or taken out, passed by the devise. A reversion may pass under the term estate, if not restrained or qualified. Then, let us look at the first branch of the above bequest. I give to my son Robert one ninth part of my estate, real, &c., after, &c. The word “ give ” is of the largest signification, and is applicable as well to real as personal estate. It is, then, a testamentary gift of one ninth of his whole property, deducting and excepting therefrom only the life estate and the income of the capital fund; the reversion, that is, the estate itself, subject to an intervening right for life, and the capital fund, after the decease of the wife, were not within the exception, therefore, they were included in the gift. The two ninths to John and Henry were of the same effect. Three other ninths are given away from the testator and his heirs, to the three daughters, only they are placed in trust; and three other' ninths to his three other sons, likewise placed in trust. Thus, by the fourth, fifth, and sixth clauses of the will, the entire nine ninths, or whole estate, are disposed of by the will. The whole estate is given, subject to certain precise and specific exceptions; these have been deducted and appropriated ; so that the whole remaining estate comes under the operation of the will, and, therefore, there is nothing to pass by descent, as undevised.
Some other points, embraced in the argument, require consideration.
It anpears, by the facts, that Benjamin F. Hooper, one of *130 the sons, died in the lifetime of the testator, intestate and without issue. This legacy, therefore, lapsed and failed to take effect. As the residuary property, including the $40,000 capital fund, the proceeds of the dwelling-house and furniture, and the reversion therein, were not given to the sons and daughters as a class, or to take share and share alike, but one part was specifically given to each son and daughter, the legacy of Benjamin F., which thus lapsed and fell into the general estate, did not vest in the survivors ; but, by a gift of one ninth to each of the eight children who survived, each could claim only his aliquot part, and, therefore, one ninth of the testator’s general estate remained undisposed of by the will, and, therefore, must descend and be distributed, as the intestate estate of the testator. In this distribution, the two grandsons, William R. Hooper and Franklin H. Hooper, both living at the decease of the testator, by right of representation of their deceased father, William Hooper, would take together one share, equal to that of the eight surviving sons and daughters, giving them together one ninth, or one moiety of one ninth each. As this was personal property, and Franklin H. had deceased, when the right to distribution and payment accrued, his share will properly go into the hands of his personal representative, to be disposed of in a due. course of administration. The surviving brother, William R., may ultimately be entitled to the share of the deceased, as heir and distributee ; but the estate will be first liable for the payment of the debts of Franklin H., if he left any, and other charges on his estate; and in such case, William R. would claim, by force of the statute of distributions, as heir of his brother. But William R. will be entitled to the other moiety of this ninth in his own right.
As to the share of Samuel Hooper, one of the sons, it appears, by the facts, that he survived his father, but died in the lifetime of the widow. One ninth vested in him, and, being personal property, it must go to his personal representative, to be administered. It being found that he died intestate and without issue, his one ninth, after due administration, and subject to debts and charges on his estate, if any, will go *131 to his heirs at law, under a decree of distribution. In such distribution, William R., if he alone survived his uncle Samuel, or he and Franklin H. together, as tenants in common, if both survive, would be entitled to one share, equally with the surviving brothers and sisters .of Samuel, under the rule of descent in this commonwealth, extending the inheritance, by right of representation, to brothers’ and sisters’ children. But this is not the subject for any decree in the present case, because it is the duty of the complainant, as executor and trustee, to pay this share to the personal representative of Samuel Hooper, deceased, without regarding any ulterior disposition of the fund. Decree accordingly.